PEOPLE v STRICKLAND

Opinion of the Court

1. Criminal Law—Guilty Pleas—Appeal and Error—Higher Charge—Lesser Charge.

Allowing trial on a higher charge following reversal of a plea-based conviction of a lesser offense would (1) discourage exercise of the defendant's right to appeal a conviction claimed to be based on an improperly accepted plea, and (2) tend to insulate from appellate scrutiny noncompliance with the guilty plea procedure established by statute and court rule.

2. Criminal Law—Guilty Pleas—Higher Charge—Lesser Charge —Same Transaction—Acceptance of Plea.

Application of the rule that upon the acceptance of a plea of guilty, as a matter of policy, the state may not thereafter charge a higher offense arising out of the same transaction has been limited in cases where (1) a defendant withdraws his plea of guilty as distinguished from cases where the plea is set aside because of a procedural error, (2) the prosecutor appeals from the entry of a guilty plea, and (3) a defendant successfully appeals from a defective plea proceeding but the prosecutor pointed out the procedural error to the trial judge before the plea was accepted.

3. Criminal Law—Plea of Guilty—Withdrawal of Plea—Subsequent Charges—Harsher Sentences—Reasoning—Record.

The rule which forbids charging a defendant with a higher offense upon the vacation of a plea-based conviction does not

References for Points in Headnotes

[1–6, 10–12] 21 Am Jur 2d, Criminal Law §§ 485, 486, 492, *et seq.,* 570, 572.

Validity of guilty pleas—Supreme Court cases. 25 L Ed 2d 1025.

[2] 21 Am Jur 2d, Criminal Law §§ 504–506.

[5, 12] 21 Am Jur 2d, Criminal Law §§ 513, 514, 516, 517.

[7] 81 Am Jur 2d, Witnesses §§ 569, 582.

[8] 29 Am Jur 2d, Evidence §§ 320, 321.

[9] 29 Am Jur 2d, Evidence § 251 *et seq.*

proscribe the imposition of a harsher sentence upon conviction provided that sentence is authorized by law and the judge's reasons for so doing are not vindictive and are based upon objective information concerning identifiable conduct of the defendant occurring after the original sentencing proceedings as affirmatively stated on the record.

4. CRIMINAL LAW—GUILTY PLEAS—PLEA PROCEEDINGS—SUBSTANTIAL COMPLIANCE—COURT RULES.

Only substantial compliance with most of the requirements of the court rule governing the taking of a defendant's guilty plea is now required because it has been demonstrated that perfect compliance with the desired guilty plea procedures is an impossibility (GCR 1963, 785.7).

5. CRIMINAL LAW—APPEAL AND ERROR—DISMISSAL OF CHARGES— CONDITIONS—AGREEMENT NOT TO APPEAL.

It is error to allow a dismissal of charges by the prosecution in one case on the condition that a defendant not appeal his conviction in another case.

6. CRIMINAL LAW—GUILTY PLEAS—APPEAL AND ERROR—HIGHER CHARGE—SAME TRANSACTION—DIFFERENT TRANSACTION.

The rule that upon the acceptance of a plea of guilty, as a matter of policy, the state may not charge a higher offense arising out of the same transaction if the plea-based conviction on a lesser offense is challenged by a defendant and overturned on appeal because of a procedural error should not be extended to bar the prosecution from charging a defendant with a second charge arising out of a transaction other than the transaction giving rise to a first charge to which the defendant pleads guilty in return for the dropping of the second charge where the defendant later challenges the plea-based conviction as being procedurally defective and gains a reversal of that conviction on appeal.

7. CRIMINAL LAW—EVIDENCE—IMPEACHMENT—PRIOR CONVICTIONS— DEFENDANT'S CREDIBILITY—DISCRETION.

A trial judge has the discretion to prohibit the use of a defendant's prior felony convictions to impeach the defendant's credibility if he should take the stand in his own behalf.

8. CRIMINAL LAW—EVIDENCE—PRIOR GUILTY PLEAS.

Evidence of prior guilty pleas is not admissible as evidence against a defendant but that rule does not prohibit a defendant from presenting such evidence.

9. CRIMINAL LAW—EVIDENCE—RELEVANCY—DISCRETION OF TRIAL
     COURT—CLEAR ABUSE OF DISCRETION—APPEAL AND ERROR.

   Determinations of whether or not evidence is relevant rest within
     the sound discretion of the trial court, and the court's determi-
     nation will not be upset on appeal unless a clear abuse of
     discretion has occurred.

DISSENT BY D. E. HOLBROOK, JR., P. J.

10. CRIMINAL LAW—GUILTY PLEAS—PLEA BARGAINS.

    *Plea bargains are an accepted method of disposing of criminal
     cases and are binding on each party.*

11. CRIMINAL LAW—GUILTY PLEAS—PLEA BARGAINS—CONDITIONS—
      RIGHT TO APPEAL.

    *A plea bargain may not be conditioned on a defendant foregoing
     his right to appeal the plea-based conviction.*

12. CRIMINAL LAW—GUILTY PLEAS—DISMISSAL OF CHARGES—REIN-
      STATEMENT OF CHARGES—APPEAL AND ERROR.

    *The prosecution should not be permitted to renege on its bargain
     to dismiss charges against a defendant merely because the
     defendant has successfully appealed a plea-based conviction; to
     allow a prosecutor to reinstate charges that were once dis-
     missed will have a "chilling" effect on some defendants con-
     cerning their right to appeal a plea-based conviction and the
     only way to prevent such a chilling effect on the right of appeal
     is to impose an absolute bar to the prosecution on the charges
     which were dismissed as a part of the plea bargain.*

Appeal from Saginaw, Hazen R. Armstrong, J. Submitted June 16, 1977, at Lansing. (Docket No. 28472.) Decided September 6, 1977. Leave to appeal applied for.

Wyatt Strickland, Jr., was convicted of armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert L. Kaczmarek,* Prosecuting Attorney, and *Peter C. Jensen,* Assistant Prosecuting Attorney, for the people.

*Dwan & Doyle,* for defendant on appeal.

Before: D. E. HOLBROOK, JR., P. J., and ALLEN and D. R. FREEMAN,* JJ.

ALLEN, J. This appeal[1] requires that we either extend or limit the following holding in *People v McMiller,* 389 Mich 425, 434; 208 NW2d 451 (1973).

"[W]e hold that upon the acceptance of a plea of guilty, as a matter of policy, the state may not thereafter charge a higher offense arising out of the same transaction."

The precise question presented is this: Where a defendant charged with two armed robberies pleads guilty in one case in return for dismissal of the other, may the prosecutor later reinstate both charges if the defendant successfully appeals his plea-based conviction?

The present case is factually distinguishable from *McMiller* in two respects. First, the two charges in this case did not arise from the "same transaction". Second, the prosecutor did not charge a "higher" offense; rather, he charged two offenses of equal rank where the defendant had previously been convicted of only one. While the facts are distinguishable, the defendant points out that the policy considerations underlying *McMiller* are also present in this case.

"Allowing trial on a higher charge following reversal of a plea-based conviction of a lesser offense would (1) discourage exercise of the defendant's right to appeal a

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] The defendant was convicted of armed robbery, MCLA 750.529; MSA 28.797, by a Saginaw County jury on February 4, 1976. Saginaw County Circuit Judge Hazen R. Armstrong sentenced the defendant to a 10–15 year prison term on February 24, 1976. This is an appeal as of right under GCR 1963, 806.1.

conviction claimed to be based on an improperly accepted plea, and (2) tend to insulate from appellate scrutiny non-compliance with the guilty plea procedure established by the statute and the court rule." 389 Mich at 432.

For the reasons outlined later in this opinion (Section I), we hold that *McMiller* does not require reversal of the defendant's conviction. We also reject two other less meritorious arguments raised by the defendant (Sections II and III).

## FACTS

On February 24, 1973, a lone gunman robbed the Martinez Grocery in Saginaw. One week later, Scott's Auto Sales in Saginaw was similarly victimized. The defendant was arrested and charged in the Scott's case and immediately became a suspect in the Martinez case.[2] While he was in custody on the Scott's charge, he confessed to committing the Martinez robbery.

Following negotiations, the defendant pleaded guilty to armed robbery in the Scott's case on April 16, 1973. That plea was taken by Saginaw County Circuit Judge Eugene Snow Huff who later imposed a 5–15 year sentence. The prosecutor then dismissed the charges in the Martinez case (this case) as required by the plea bargain.

The plea-based conviction in the Scott's case was appealed to another panel of this Court. The conviction was reversed and remanded in an unpublished opinion dated January 2, 1975, because Judge Huff had failed to give all of the warnings required by GCR 1963, 785.7. On remand, the prosecutor renewed the armed robbery charge in

[2] The present appeal is from the defendant's conviction in the Martinez case. This opinion refers to the two cases as "the Martinez case" and "the Scott's case".

the Scott's case[3] and filed a new complaint charging armed robbery in the previously dismissed Martinez case.

The Scott's case was set for trial before Judge Huff on September 16, 1975. The defendant appeared with his attorney and once again pled guilty. The prosecutor emphasized—and the defendant and his attorney acknowledged—that the original plea bargain was no longer being offered to the defendant. The prosecutor clearly stated his intention to proceed with the Martinez case even if the defendant pled guilty in the Scott's case. After accepting the plea, Judge Huff again sentenced the defendant to 5–15 years in prison. That conviction has not been appealed.

The Martinez case was set for a jury trial before Judge Armstrong on February 3, 1976. A *Walker*[4] hearing was held before the trial started in order to determine the voluntariness of the defendant's confession. The defendant testified that a Detective Washington had promised that he would not be prosecuted for the Martinez robbery if he confessed. But Washington denied making any promises. The judge accepted Washington's version of the events and ruled that the confession was voluntary and admissible.

The defendant then asked the judge to exercise his discretionary power to prevent the prosecutor from impeaching the defendant with evidence of two prior felony convictions. MCLA 600.2159; MSA 27A.2159, *People v Jackson,* 391 Mich 323; 217 NW2d 22 (1974). The judge recognized that he had the power to do that, but denied the motion.[5]

---

[3] *McMiller* did not affect the Scott's case because the defendant had pleaded guilty to the original charge, not a reduced charge.

[4] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

[5] *People v Jackson, supra,* lists several factors which the judge

The trial began immediately following the rulings on the preliminary motions. After the prosecution had rested, defense counsel asked the judge to rule on whether the defense could introduce evidence of the original plea bargain in the Scott's case. The defense theory was that proving the original bargain would support the defendant's testimony that his confession had been induced by Detective Washington's promise that the Martinez case would not be prosecuted. The judge ruled that evidence of the Scott's case plea and plea bargain was not admissible. He stated that the defendant could testify about the circumstances surrounding the confession—including the alleged promises by Washington—but that evidence of the later plea negotiations in the Scott's case was irrelevant.

The defendant then announced that, because of the adverse rulings on his various motions, he had decided not to testify. The defense rested without presenting any witnesses.

The jury found the defendant guilty of armed robbery as charged. Judge Armstrong sentenced the defendant to a 10–15 year term to be served concurrently with the 5–15 year sentence in the Scott's case. The irony is that, as a result of his "successful" appeal from his original plea conviction in the Scott's case, the defendant now has two convictions and a minimum 10-year sentence

should consider when making this discretionary ruling. One factor is "whether it [the prior conviction] is for substantially the same conduct for which the accused is on trial". 391 Mich at 333. The prosecutor in this case argued that the prior crimes were similar and that impeachment should therefore be allowed.

*Jackson* was based on the opinion by then Judge Burger in *Gordon v United States,* 127 US App DC 343; 383 F2d 936 (1967). That opinion clearly states that similarity of the prior offense weighs *against* impeachment, not for it. This is because the improper prejudicial impact of a similar offense is considered to be greater.

There is no indication that the trial judge in the present case shared the prosecutor's misapprehension of this rather subtle point.

whereas he previously had only one conviction and a 5-year minimum sentence. This serves to highlight his argument that *People v McMiller, supra,* should have barred the renewed prosecution in this case.

## I. IMPACT OF McMILLER

*People v McMiller,* 389 Mich 425; 208 NW2d 451 (1973), *cert den* 414 US 1080; 94 S Ct 599; 38 L Ed 2d 486 (1973), had drawn a generally unfavorable response from most of the members of this Court. The underlying feeling has been that it is wrong to allow a defendant to retain all of the benefits of his plea bargain while allowing him to disown the attendant obligations.

*McMiller* was denied retroactive application in several cases where the second conviction— whether by plea or trial—was obtained before the *McMiller* decision was released. *People v Potts,* 55 Mich App 622; 223 NW2d 96 (1974), *People v Skowronek,* 57 Mich App 110; 226 NW2d 74 (1974), and *People v McGreevy,* 52 Mich App 52; 216 NW2d 623 (1974). Compare *Mikowski v Grand Traverse County Sheriff,* 52 Mich App 66; 216 NW2d 603 (1974), but contrast *People v Goins,* 54 Mich App 456; 221 NW2d 187 (1974).

This Court has repeatedly held that *McMiller* does not apply in cases where a defendant withdraws his guilty plea—as distinguished from cases where the plea is set aside because of a procedural error. *People v Moore,* 74 Mich App 195; 253 NW2d 708 (1977), and *Moore v 9th District Judge,* 69 Mich App 16; 244 NW2d 346 (1976). The Supreme Court initiated this limitation. See *People v Millard,* 394 Mich 99; 228 NW2d 783 (1975), and *People v Lewandowski,* 394 Mich 529; 232 NW2d 173 (1975).

The Supreme Court has also restricted the application of *McMiller* in cases where the prosecutor appeals from the entry of a guilty plea, *Genesee Prosecutor v Genesee Circuit Judge,* 391 Mich 115; 215 NW2d 145 (1974), or where a defendant successfully appeals from a defective plea proceeding but the prosecutor pointed out the procedural error to the trial judge before the plea was accepted. *Guilty Plea Cases,* 395 Mich 96; 235 NW2d 132 (1975).

In *People v Triplett,* 68 Mich App 531; 243 NW2d 665 (1976), this Court held that, while *McMiller* may prohibit retrial on a higher charge, it does not prohibit imposition of a higher sentence following retrial on the charge to which the initial plea was entered. But *cf. North Carolina v Pearce,* 395 US 711; 89 S Ct 2072; 23 L Ed 2d 656 (1969).

Even in the cases where *McMiller* has been strictly followed or extended by analogy, this Court has usually done so reluctantly. See *People v Thornton,* 70 Mich App 508; 246 NW2d 9 (1976), and *People v Hubbard,* 57 Mich App 542; 226 NW2d 557 (1975), *remanded for reconsideration on other grounds,* 395 Mich 801 (1975). But contrast *People v Goins, supra.*

Finally, we note that other courts, including the United States Supreme Court, would apparently decline to apply a *McMiller*-type analysis on facts like those in the present case. See Anno.: *Enforceability of Plea Agreement, or Plea Entered Pursuant Thereto, with Prosecuting Attorney Involving Immunity from Prosecution for Other Crimes,* 43 ALR3d 281, *Santobello v New York,* 404 US 257; 92 S Ct 495; 30 L Ed 2d 427 (1971), *United States v Wells,* 430 F2d 225 (CA 9, 1970), and *State v Myers,* 12 Ariz App 409; 471 P2d 294 (1970). It should be emphasized that all the preceding cita-

tions are to cases which, like the present one, involved two or more separate substantive offenses. They are thus distinguishable from *McMiller* in which the defendant pled guilty to a lesser included offense within the original charge.

Two Michigan decisions deserve special comment because of their close similarity to the present case. In *People v Clark,* 43 Mich App 476; 204 NW2d 332 (1972), this Court allowed the prosecutor to reinstate separate substantive charges when an unexpected Supreme Court decision upset the bargained-for plea conviction. Since *Clark* was decided before *McMiller,* its validity as precedent is questionable. However, it should also be noticed that *Clark* was authored by then Judge Levin and it is factually distinguishable from *McMiller* on the same basis as is the present case. The rationale in the *Clark* decision was summarized as follows:

"Whether Clark sought to get out of the bargain or was relieved of the bargain is beside the point. He was not required to serve the sentence imposed by the court. We see no reason to hold the prosecutor in such a case to his part of the bargain. Clearly, this is a case of mutual mistake concerning a basic underlying assumption; on principle, although this is a mistake of law and not of fact, the people are entitled to be relieved of the consequences of that mistake." 43 Mich App at 484.

The other decision deserving special mention is *People v Goins, supra.* This writer concurred in the *Goins* opinion which was written by Judge T. M. Burns. The defendant in that case was charged with sale of marijuana and carrying a concealed weapon. Pursuant to plea negotiations, a third count charging possession of marijuana was added and the defendant pled guilty to that count

and to the carrying a concealed weapon charge. Both pleas were subsequently vacated by the trial court on the basis of Supreme Court decisions. The prosecutor then reinstated the two original charges. On appeal, this Court held that *McMiller* barred reinstatement of the sale of marijuana charge.

For present purposes, *People v Goins, supra,* may be distinguished because all of the charges arose out of the "same transaction" and sale of marijuana was a "higher" offense since it then carried a possible life sentence.

"[W]e hold that upon the acceptance of a plea of guilty, as a matter of policy, the state may not thereafter charge a *higher offense* arising out of the *same transaction.*" (Emphasis supplied.) *People v McMiller,* 389 Mich 425, 434; 208 NW2d 451 (1973).

By way of contrast, the charges in the present case arose from separate transactions and were of equal rank. Further, *Goins* was decided just one year after *McMiller* when there had been less time to evaluate *McMiller's* impact and the validity of its underlying policy assumptions.

Those policy considerations were quoted at the beginning of this opinion. We repeat them here in extended form.

"Allowing trial on a higher charge following reversal of a plea-based conviction of a lesser offense would (1) discourage exercise of the defendant's right to appeal a conviction claimed to be based on an improperly accepted plea, and (2) tend to insulate from appellate scrutiny non-compliance with the guilty plea procedure established by the statute and the court rule.

"We, the Bench and Bar of Michigan, have invested untold hours of effort in an attempt to devise a rule for the taking of guilty pleas which will fairly and finally

dispose of over 75% of our criminal cases. In the latest
amendment to our court rule dealing with this subject
we have detailed certain steps necessary to the proper
taking of a guilty plea and provided that failure to
follow the rule will constitute reversible error. We
intend thereby to assure the corollary that observance
of the rule will result in unassailable conviction." 389
Mich at 432.

Subsequent experience demonstrated the impossi-
bility of obtaining perfect compliance with desired
guilty plea procedures. After an initial attempt at
rigidly insisting on strict compliance, the Supreme
Court reconsidered and now requires only substan-
tial compliance with most of the requirements of
GCR 1963, 785.7 as amended. *People v Shekoski,*
393 Mich 134; 224 NW2d 656 (1974), and *Guilty
Plea Cases, supra.* The *Shekoski* spirit and the
availability of appointed attorneys for indigents
have resulted in a huge number of appeals from
guilty plea convictions. The appellants usually
argue that their convictions must be reversed
because of minor deviations from the court rule
procedures, even though there is no real possibility
that the imperfection in any way influenced the
decision to plead guilty. For the most part, these
appeals consume time and resources which could
be more profitably devoted to other matters. The
frustrations attendant on this situation led one
panel of this Court to take the extreme step of
holding that there is no appeal as of right from a
guilty plea conviction. *People v Webb,* 75 Mich
App 494; 255 NW2d 661 (1977). Whether or not
*Webb* is ultimately approved by the Supreme
Court, it calls into question the underlying as-
sumption of *McMiller* that we should avoid—at all
costs—discouraging appeals in guilty plea cases.

In *People v Harrison,* 386 Mich 269; 191 NW2d

371 (1971), the Supreme Court held that it was reversible error to dismiss one case *on condition that* the defendant not appeal his conviction in another case. We recognize that there is a fine line between the overt practice condemned in *Harrison* and allowing an implied threat that other charges will be reinstated if an appeal is successful. *People v Clark, supra,* dealt with precisely this problem.

"The Supreme Court has chosen, at least in words, to limit its *Harrison* rule to cases where the 'stated reason' for the adjournment of the trial is to chill exercise of a defendant's constitutional right to appeal a criminal conviction. And, even if the rule is not so limited—if it applies as well to cases where it can be demonstrated that, although not 'stated', pending charges were held over the head of a convicted person in an effort to dissuade him from appealing—it has not been shown on this record that what was done here was done in an effort to chill Clark's, or any other defendant's, exercise of his right to appeal." 43 Mich App at 483.

We believe that that reasoning applies equally in the present case.[6]

For all of the reasons outlined above, we refuse to extend *McMiller* by holding that it bars reinstatement of the charge in this case. We are free to reach that result because the present case is factually distinguishable in significant respects from the rule announced in *McMiller.* We choose to reach that result because of serious doubts about the continuing validity of *McMiller's* policy foundations.

---

[6] The prosecutor's brief states that the defendant was offered the original plea bargain immediately following his successful appeal in the Scott's case. The prosecutor states that the defendant rejected the deal, thus forcing the prosecutor to prepare for trial. When the offer was rejected, the offer was withdrawn. The second plea in the Scott's case was entered on the day set for trial. At that time, the prosecutor clearly stated that the bargain was no longer available.

## II. IMPEACHMENT WITH PRIOR FELONY CONVICTIONS

The defendant had two prior felony convictions, one for rape and one for armed robbery (the Scott's conviction). The defendant asked the trial judge to exercise his discretion and prohibit impeachment with evidence of those convictions. The court made the following ruling:

"Well, it's the opinion of the Court exercising its discretion, that the prosecution may use this to test the credibility of the witness. * * * [S]o until the Supreme Court makes it absolutely mandatory that you can't use that for credibility it's the discretion of the Court that you may if you so choose."

The trial judge obviously recognized his discretion and exercised it. *People v Jackson, supra.* He also clearly identified the exercise of his discretion as required by the order in *People v Cherry,* 393 Mich 261; 224 NW2d 286 (1974). He did not specifically enumerate and evaluate the various factors which *People v Jackson, supra,* borrowed from *United States v Gordon, supra.* In fact, the tone of the ruling suggests that he would allow impeachment in almost all cases. The defendant argues that these facts demonstrate an abuse of discretion, but we disagree. No Michigan case has yet required a trial judge to evaluate the *Gordon* consideration on the record. By allowing trial judges discretion in these matters, the Supreme Court must have accepted the fact that some judges would lean to allow impeachment in most cases, whereas others would usually prohibit it. But the matter is discretionary with the trial court. That discretion was exercised in this case. And we find no abuse of that discretion. The defendant's argument is without merit.

## III. Evidence Of The Prior Plea Bargain

The defendant wanted to prove the prior plea bargain in the Scott's case in order to buttress his proposed testimony that Detective Washington had promised that he would not be prosecuted for the Martinez robbery if he confessed. The theory was that proving that things eventually worked out that way (in the initial plea bargain) would impeach Washington's testimony that he had made no promises in return for the confession. The trial judge ruled that he would allow the defendant to testify about what happened during the interview with Washington but he would not allow testimony about the later plea bargain in the Scott's case. He felt that evidence of what happened in the Scott's case was not relevant to this prosecution for the Martinez robbery.

Evidence of prior guilty pleas is not admissible against a defendant. *People v George,* 69 Mich App 403; 245 NW2d 65 (1976), but that rule would not have prohibited presentation of testimony in the present case where it was the defendant who sought to introduce the evidence.

But determinations of whether or not evidence is relevant rest within the discretion of the trial court, and the court's determination will not be upset on appeal unless a clear abuse of discretion has occurred. *People v Rimson,* 63 Mich App 1; 233 NW2d 867 (1975), and *People v Hodo,* 51 Mich App 628; 215 NW2d 733 (1974). We find no abuse of discretion in this case.

### Conclusion

The conviction and sentence are affirmed.

D. R. Freeman, J., concurred.

D. E. Holbrook, Jr., P. J. *(dissenting).* I agree that *People v McMiller,* 389 Mich 425; 208 NW2d 451 (1973), does not control the instant case. I am also of the opinion that the issue to be considered is not really whether *McMiller, supra,* should be extended but rather whether a prosecutor should be held to be bound by the terms of a formal plea agreement where the defendant has fulfilled his part of the bargain.

As a matter of judicial policy I believe the prosecutor's original agreement with defendant to dismiss the Martinez charge in return for his guilty plea to the Scott's charge should bar the instant prosecution. My conclusion rests on the interplay between two important judicial policies —enforcing the prosecutor's end of a plea bargain and preventing a "chill" on a defendant's right to appeal.

Plea bargains are an accepted method of disposing of criminal cases and are binding on each party. *People v Reagan,* 395 Mich 306, 314; 235 NW2d 581 (1975), *People v Eck,* 39 Mich App 176, 178; 197 NW2d 289 (1972). In *Reagan* the Supreme Court held binding a prosecutor's bargain to dismiss charges if the defendant successfully passed a polygraph test. Although the defendant passed the test, the prosecutor brought charges. Regardless of the wisdom of the agreement, the nolle prosequi order placed on the record as part of the bargain represented a pledge of public faith by the prosecutor and is a binding agreement not to prosecute. 395 Mich at 317–318. I concurred in *People v Shipp,* 68 Mich App 452; 243 NW2d 18 (1976), *lv den* 397 Mich 826 (1976), which essentially held that if the prosecutor had not complied with his end of a bargain to dismiss charges, *Reagan* mandated that the defendant be discharged.

In short, when a prosecutor enters into an agree-

ment not to prosecute or dismiss charges, the prosecutor is bound by his promises when the defendant has fulfilled the conditions of his part of the bargain. In the instant case defendant pled guilty to one charge of robbery in return for the prosecutor's dismissal of another robbery charge. The bargain was not and could not be conditioned on defendant foregoing his right to appeal the guilty plea. The defendant did exactly as required under the plea agreement; the prosecutor did not.

In *People v Soto,* 62 Mich App 370; 233 NW2d 545 (1975), the Court addressed both issues which form the basis of this dissent—enforcing a prosecutor's agreement and the "chill" on defendant's right to appeal if the prosecutor's agreement is not enforced. Although concluding that the unexplained delay in the prosecutor's filing of a dismissal of one charge until the 60-day appeal period had run on the plea-based conviction did not constitute per se error, the Court noted the "chilling" effect such deliberate prosecution practices[1] might have on some defendants. The Court noted, however, that the "chilling" effect might be illusory since a prosecutor cannot renege on his bargain to dismiss charges merely because the defendant has appealed a plea-based conviction. 62 Mich App at 374. I agree there would be no "chilling" effect on defendant's right to appeal if the prosecutor was barred from resurrecting once-dismissed charges.[2]

---

[1] *See People v Harrison, People v Ledrow, People v Butler, infra.*

[2] While *Soto* indicates a defendant may waive an objection to prosecution on a once dismissed charge and since defendant Strickland admitted in his second Scott's guilty plea that he knew the prosecutor could bring him to trial on the Martinez charge, the question of waiver might be raised. I do not think the defendant could in any way be said to have "waived" his "right" to hold the prosecutor to the original agreement to dismiss the Martinez charge. Waiver generally indicates the relinquishment of a known right. According to the majority's holding, there exists no such right. Therefore I do not see how defendant can be considered to have waived a right he does not know exists.

According to the majority in the instant case, however, a successful appeal does not constitute such a bar, therefore I must address my next argument that allowing a prosecutor to abrogate an agreement effectively "chills" a defendant's right to appeal.

As noted by the majority it is constitutionally obnoxious for a prosecutor to dismiss one charge on condition that a defendant not appeal a conviction or plea in another case, whether overtly as in *People v Harrison,* 386 Mich 269; 191 NW2d 371 (1971), or by waiting to dismiss a charge until after the 60-day appeal period on the plea-based conviction has expired, *People v Ledrow,* 53 Mich App 511; 220 NW2d 336 (1974), *People v Butler,* 43 Mich App 270; 204 NW2d 325 (1972). In the instant case the prosecutor brought the defendant to trial on the Martinez charge even though the prosecutor had obtained a second guilty plea and the same sentence in the Scott's case as he had obtained originally. In essence the defendant was punished for exercising his right to appeal.

In *Soto* the Court noted that the defendant in that particular case was not deterred from appealing but that less assertive defendants might be if they feared the prosecutor could reinstate once dismissed charges if they appealed the plea conviction. I do not think *Soto* goes far enough since it restricts its analysis to whether a particular defendant was *actually* deterred from appealing. To allow a prosecutor to reinstate charges that were once dismissed will have a substantial impact on all future defendants who agree to a plea bargain. Defense counsel will begin counseling their clients that appealing a plea-based conviction subjects the defendant to the full array of charges that were dismissed pursuant to the bargain. Thus a class of

timid defendants may be improperly inhibited from exercising their fundamental right to appeal. The only way to prevent such a "chilling" of the right of appeal is to impose an absolute bar to prosecution on the dismissed charges.

As the *Guilty Plea Cases,* 395 Mich 96; 235 NW2d 132 (1975), provide, a prosecutor shares responsibility for ensuring the error-free taking of guilty pleas. Although we could not hold the prosecutor to this standard in the instant case, since the original plea was taken in 1973, in the future a prosecutor should have only himself to blame if a bargained-for guilty plea is found defective on appeal.

I believe the prosecutor should have been barred from resurrecting the Martinez robbery charge after defendant's successful appeal of the initial guilty plea to the Scott's charge. I would therefore vacate defendant's conviction and sentence on the Martinez robbery.